## J. B. PITTS *v.* THE STATE.

1. THEFT—EVIDENCE. — Accused procured his landlord to estray a horse, but at the expense and for the benefit of the accused, who was to retain the possession of the animal. Five months afterwards he sold the horse. *Held*, that, in the absence of evidence to show any false pretext by the accused in obtaining possession of the horse, or that, when he obtained such possession, he intended to deprive the owner of its value and to appropriate it to his own use, a conviction for theft cannot be sustained.

2. SAME—INDICTMENT. —Note that the ownership is alleged in the person who estrayed the animal, and that the conviction is not impugned on that account.

APPEAL from the District Court of McLennan. Tried below before the Hon. L. C. ALEXANDER.

The case is fully stated in the opinion.

*Sleeper, Jones & Kendall,* for the appellant.

*George McCormick*, Assistant Attorney General, for the State. Was the ownership of the animal properly laid in the indictment, and, if so, was the appropriation of the same by the person to whom it was delivered a theft? *Maddox* v. *The State*, 41 Texas, 206.

The reason given by Chitty why goods stolen from a laundress who has them in charge may be safely described in the indictment as her property is because she is answerable for the goods to her employers. If this reason why the goods may be described as the property of a laundress is a good one, then in this case the ownership of the animal was properly laid; for, having given bond, and taken steps to estray the animal, Mixon was liable for its value, either to the county or its owners. Chitty's Cr. Law, sec. 947; 2 Pasc. Dig., art. 6818; *Blackburn* v. *The State*, 44 Texas, 460.

It is also submitted that the prisoner was the tenant, the servant, of the alleged owner of the animal, and obtained his possession of the animal by reason of his being such servant. There is a difference between such custody and possession, and the servant might commit larceny of the animal although his possession was legal. 2 Bishop's Cr. Law, sec. 824 *et seq.*, and note.

If these be correct propositions, then it was not necessary to show that the prisoner originally took possession of the horse with the intention of stealing him.

WINKLER, J. The indictment charges the appellant with the theft of a black gelding, the property of one J. B. Mixon, alleged to have been committed on May 14, 1877.

To constitute theft the taking must be wrongful. If the property come into the possession of the person accused of the theft by lawful means, the subsequent appropriation of it is not theft. If, however, the original taking was lawful, yet if possession was obtained by any false pretext, or with

the intent to deprive the owner of the value thereof and appropriate it to the use and benefit of the person taking, and such property be so appropriated, then the offense of theft would be complete. Penal Code, art. 778 (Pasc. Dig., art. 2385); Whart. Cr. Law, secs. 1788, 1790; *Quitzow* v. *The State*, 1 Texas Ct. App. 65. It is shown by the evidence that the accused was a tenant of the alleged owner of the animal alleged to have been stolen; that the animal had been running as an estray on the premises of the alleged owner, Mixon, and upon which the defendant resided; that the accused was desirous of taking up and estraying the animal under the law regulating estrays, and applied to the justice of the peace for that purpose, but was told that he, being but a tenant, could not do so, and that a bond must be made by the owner of the premises. Upon receiving this information the accused went to the proprietor, Mixon, and procured him, Mixon, to take the necessary steps to estray the animal, which was done by filing a bond with security and having the property appraised, the proceedings being based on the affidavit of Mixon, with the understanding that, whilst the proceedings were conducted in the name of Mixon, the proprietor, the tenant, Pitts, the accused, was to pay the expenses of the proceeding and retain the possession of the animal, and enjoy whatever benefits might accrue from the transaction. The straying of the animal took place on December 9, 1876. The accused retained the possession of the animal until about May 14, 1877, when, agreeably to the evidence, he traded him for another horse and $20.

When the accused traded the animal, he by that act appropriated it to his own use and benefit in such way as to lay him liable to indictment for the theft thereof, if the manner of obtaining the possession of it was such that in law he was liable upon the act of appropriation.

To our minds the original possession was acquired by

lawful means.   If so, then, under the law as above stated, he would only be liable, notwithstanding the appropriation, by it being made to appear, either that the possession was obtained by means of some false pretext, or with an intent to deprive the owner of the value thereof and appropriate it to his own use and benefit.

The evidence set out in the transcript is not sufficient to establish the fact that the possession was obtained under either of those circumstances.   And on this ground we are of opinion the evidence was not sufficient to support the verdict rendered, and that a new trial should have been granted.   For the same reasons above stated, the judgment must be reversed and the cause be remanded.

*Reversed and remanded.*